UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| L.H., a minor, by and through<br>Next Friend, ASHLYN HENRY<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>WENTZVILLE R-IV SCHOOL DISTRICT, et al.,<br><br>　　　　Defendants. | Case No. 4:23-CV-00808-SRC<br><br>**JURY TRIAL DEMANDED** |

### **DEFENDANT WENTZVILLE R-IV SCHOOL DISTRICT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS OR IN THE ALTERANTIVE MOTION FOR MORE DEFINITE STATEMENT**

COMES NOW Defendant Wentzville R-IV School District ("WSD"), by and through the undersigned counsel, and for its Memorandum of Law in Support of its Motion to Dismiss or in the alternative More Definite Statement, states as follows:

### **INTRODUCTION**

Plaintiff originally filed her lawsuit in state court. This action was timely removed pursuant to 28 U.S.C. §1331 as this case involves a federal question. In her Petition for Damages ("Petition") [Doc. 4], Plaintiff attempts to bring five counts against Defendants WSD, Principal Megan Sutton, and Janes Does 1 and 2.[1] Count I purports to state a claim against WSD pursuant to Section 504 of the Rehabilitation Act that Plaintiff was denied benefits. See 29 U.S.C. §794. Count II purports to allege a claim pursuant to the Americans with Disability Act ("ADA") against WSD that it failed to provide Plaintiff with a reasonable accommodation. See 42 U.S.C. §12132. Count III alleges a state law claim of negligence against Sutton for failing to arrange adequate supervision. Count IV alleges a state law claim of battery against Defendant Jane Doe 1 for

---

[1] As of the date of the filing of this motion, Defendants Sutton and Does 1 and 2 have not yet been served.

striking or contacting Plaintiff in a manner so as to cause her head to strike a wall. Count V alleges a claim of failure to provide treatment against WSD and Jane Doe 2.  WSD now moves to dismiss Counts I, II and V pursuant to FED. R. CIV. PRO. 12(b)(6) for failing to state a claim.

## FACTS ALLEGED[2]

Plaintiff L.H. is a disabled female child with autism and practically nonverbal who was a student at Heritage Primary School ("the School") in the WSD on September 27, 2021. [Doc. 4 at ¶¶1, 3, 15 18, 42].  L.H. had an Individualized Education Program ("IEP") that required her to have adult support "anytime that [L.H.] is outside of the special education classroom for support for peer interaction, safety awareness, and modification of curriculum." [Doc. 4 at ¶¶16].

On the date in question, Plaintiff alleges "upon information and belief" an employee of the school, Jane Doe 1 ("Miss K"), struck *or* contacted Plaintiff "in such a manner as to cause [L.H.'s] head to strike a wall inside the School" causing L.H. to suffer an injury.  [Doc. 4 at ¶¶4,18, 19]. After this incident, Plaintiff was taken to the playground where her "paraprofessional left her in order to attend to something else." [Doc. 4 at ¶21].  Plaintiff then fell to the ground and became pale and her eyes rolled back in her head at which point she *was brought* inside the school building. [Doc. 4 at ¶¶22, 23].  Once inside the school, Plaintiff defecated in her pants, lost consciousness, and her parents were called and took her to a hospital.  [Doc. 4 at ¶¶24, 26, 29].

## STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, a complaint must allege facts sufficient "to state a claim to relief that is plausible on its face." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007); <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009).  The purpose of a Rule 12(b)(6) motion to dismiss is to test the legal sufficiency of a complaint so as to eliminate those actions "which are

---

[2] While WSD disputes Plaintiff's allegations, it will assume such facts as true solely for the purposes of this Motion.

fatally flawed in their legal premises and designed to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity." *Young v. City of St. Charles,* 244 F.3d 623, 627 (8th Cir. 2001) (*citing Neitzke v. Williams*, 490 U.S. 319, 326-327 (1989)).  Importantly, "[w]here the allegations show on the face of the complaint there is some insuperable bar to relief, dismissal under Rule 12(b)(6) is appropriate." *Benton v. Merrill Lynch & Co. Inc.,* 524 F.3d 866, 870 (8th Cir. 2008).  While a complaint challenged by a Rule 12(b)(6) motion does not need detailed factual allegations, a plaintiff must still provide grounds for relief, and neither "labels and conclusions" nor "a formulaic recitation of the elements of a cause of action" will suffice. *Twombly*, 550 U.S. at 555.  "'Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice' to defeat a motion to dismiss." *Iqbal,* 556 U.S. at 678 citing *Twombly*, 550 U.S. at 556.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal,* at 679 (citing Fed. R. Civ. P. 8(a)(2)).'"

## **ARGUMENT**

**I.     COUNTS I AND II FAIL TO STATE A CLAIM BECAUSE THE FACTS ALLEGED ARE INSUFFICIENT TO ESTABLISH L.H. WAS DISCRIMINATED AGAINST BECAUSE OF HER DISABILITY OR THAT WSD ACTED WITH BAD FAITH OR GROSS MISJUDMENT.**

To state a claim under either Section 504 of the Rehabilitation Act or the ADA, a plaintiff must allege facts sufficient to support she: (1) was a qualified individual with a disability; (2) was denied the benefits of a program or activity of a public entity receiving federal funds; and (3) was discriminated against based on her disability. *Estate of Barnwell v. Watson*, 880 F.3d 998, 1004 (8th Cir. 2018).  However, where the alleged violations are based on education services for disabled children, the Plaintiff must further prove that school official acted in bad faith or with gross misjudgment. *B.M. v. S. Callaway R-II Sch. Dist.*, 732 F.3d 882, 887-88 (8th Cir. 2013).

3

Because Section 504 and the ADA are similar in substance, cases interpreting either are applicable and interchangeable. *Gustafson v. Bi-State Dev. Agency*, 29 F.4th 406, 412 (8th Cir. 2022).

> **A.     The Factual Allegations Are Insufficient To Establish That Plaintiff Was Denied Benefits Or Discriminated Against Because Of Her Disability.**

As discussed above, a necessary element to state a cause of action under Section 504 and the ADA is that the Plaintiff was discriminated against based on her disability. Section 504 specifically provides, "[n]o otherwise qualified individual with a disability in the United States…shall, *solely by reason* of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance…" 29 U.S.C. § 794.  Similarly, the ADA provides, "no qualified individual with a disability shall, *by reason* of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.  Under both Section 504 and the ADA, the denial of benefits or discrimination must be *solely* by reason of the disability.  29 U.S.C. §794; 42 U.S.C. §12132; *Schnelting v. St. Clair R-XIII Sch. Dist.*, 2011 U.S. Dist. LEXIS 136002 at *6, (E.D. Mo., Nov. 28, 2011).

In *Timothy H. v. Cedar Rapids Comminity Sch. Dist*, the Court held the Plaintiff failed to establish the second and third elements of her Section 504 claim.  178 F.3d 968, 972 (8th Cir. 1999).  There, the plaintiff wished to participate in an intra-district program where she could attend a school different than her regularly assigned school because her parents preferred the special education program at the other school. *Id*. at 970.  A condition of the program was that the plaintiff was required to provide her own transportation since she was not attending her regular school, and transporting the student would cost the district an additional $24,000.  *Id*.  With respect to the second element of her Section 504 claim, the Court held the evidence clearly established the

4

plaintiff was not denied the benefit of participating in the intra-district transfer program because the district had *considered* and *granted* her application for participation, subject to the requirement that her parents transport her (a requirement applicable to everyone). Id. at 972-73.  The Court then held that the plaintiff had also failed to establish the third element of her claim because there was *no evidence of overt discrimination*.  Id. at 973.  In so holding, the Court noted, among other reasons, that the plaintiff was not denied access *because of* her disability, but because her parents did not wish to comply with a main condition of the program. Id.

Similarly, in Yousaf v. Curators of the Univ. of Mo., the plaintiff was dismissed from the University of Missouri and thereafter filed a nineteen-count complaint alleging, among other things, a violation of Title II of the ADA, along with a separate ADA reasonable accommodation claim.[3]  2019 U.S. Dist. LEXIS 47874, at *2 (W.D. Mo. March 22, 2019).  There, the plaintiff alleged his disability was ADHD and that he was discriminated against when he received failing grades, was accused of cheating, and that his procedural rights were violated when he was dismissed. Id. at *13.  The complaint attributed these actions to disability discrimination. Id.  In dismissing the plaintiff's claim, the Court noted that combining colorful allegations with a wholly speculative and unsupported conclusion that these actions were done "out of disability animus" was insufficient to state a plausible ADA claim. Id.  In dismissing the reasonable accommodation claim, the Court noted that the complaint did not identify or explain exactly what the requested accommodations were, which was particularly problematic because other portions of the complaint plead facts which rebutted the reasonable accommodation claim, namely, that plaintiff was granted additional time on exams. Id. at *14.

---

[3] The court in Yosaf noted that " [t]he Complaint is occasionally vague and confusing; differently numbered counts are sometimes similarly named and make essentially the same allegations." "

Here, in Counts I and II, Plaintiff attempts to allege in conclusory fashion that she was denied educational benefits. Plaintiff, however, has alleged no facts whatsoever to support that any denial or discrimination occurred, much less that it occurred *solely* because of her disability. Under the Rehabilitation Act and Title II of the ADA, public entities are required to provide reasonable accommodations. See <u>Davis v. Francis Howell Sch. Dist.</u>, 138 F.3d 754, 756 (8th Cir. 1998). The facts alleged in this case, however, do not support a denial of reasonable accommodations. If anything, the bare facts Plaintiff has alleged rebut this contention and clearly establish that Plaintiff was *considered for* and *granted* access to the benefits of the WSD program of education by way of her IEP. [Doc. 4 at ¶21]. Plaintiff has also alleged no facts whatsoever of overt discrimination. At best, Plaintiff has alleged a *de minimis* failure to implement an element of her IEP on an isolated occasion, which is insufficient to prevail on a claim challenging an IEP. See <u>J.T. v. Mo. State Bd. of Educ.</u>, 2009 U.S. Dist. LEXIS 7864, *17 4:08CV1431RWS (E.D. Mo. Feb. 4, 2009) (in analyzing a challenge to an IEP under the Individuals with Disabilities Education Act ("IDEA") the Court held that "to prevail on a claim challenging the implementation of an IEP, the aggrieved party must show more than a *de minimis* failure to implement all elements of that IEP, and instead, must demonstrate that the school board or other authorities failed to implement *substantial* or *significant* portions of the IEP.").

Here, even if a denial of any WSD benefits occurred, by Plaintiff's own pleading, it was not because of her disability, but because of "something else."[4] Plaintiff's Petition alleges nothing more than a single, isolated incident where "L.H.'s paraprofessional left to attend to something else." [Doc. 4 at ¶21]. From Plaintiff's own pleading, we know the following: (1) Plaintiff was enrolled and attending school [Doc. 4 at ¶13]; (2) she had an IEP [Doc. 4 at ¶21], (3) she was

---

[4] Plaintiff does not allege what the "something else" was, an emergency involving another student for example.

spending time in a special education classroom [Doc. 4 at ¶16]; (4) she was assigned adult support at all relevant times by way of Jane Doe 1 and a paraprofessional [Doc. 4 at ¶¶18 and 21]; and (5) said adult support was with Plaintiff outside the special education classroom [Doc. 4 at ¶¶18 and 21].  From these allegations, it is unclear what specific discrimination or denial of benefits Plaintiff is attempting to allege, but what is clear, is that the alleged denial of supervision (if any) had nothing to do with Plaintiff or her disability, but was instead due to "*something else*." [Doc. 4 at ¶21].

      Additionally, what is alleged is as important as what is *not* alleged.  For instance, there are no allegations that Plaintiff was denied an IEP and no allegations that Plaintiff's IEP was inadequate.  While it is alleged that Plaintiff required adult supervision, it is not alleged that the supervisor had to be a singular designated person, or that said person could not be substituted or replaced with someone else.  It is similarly not alleged that Plaintiff was left alone on the playground without *any* adult supervision.[5]  Nor is it alleged that Plaintiff did not have one-to-one supervision from someone else while her paraprofessional attended to "something else."  Further, Plaintiff alleges she was "brought" inside the building after becoming pale and her eyes rolled back in her head [Doc. 4 at ¶23], and a reasonable inference therefrom is that Plaintiff was brought inside the building by another adult aide or paraprofessional.[6]  It is also unclear how a singular, isolated incidence of a paraprofessional stepping away has somehow led to a denial of educational benefits because Plaintiff has alleged no facts whatsoever to identify what benefits have been

---

[5] In the event Plaintiff argues that her pleading could be amended to add allegations of this nature, it is worth noting a video of the alleged incident outside is captured by surveillance cameras of the school, which has been made available to Plaintiff and her counsel, which clearly depicts two adult aides within arm's length of Plaintiff on the playground at the time her paraprofessional leaves to take another student.
[6] In fact, this is precisely what happened as depicted in the video referenced in Footnote 5 above.

denied; Plaintiff has made only conclusory allegations that she suffered "discrimination" [Doc. 4 at ¶40] and "was deprived of educational performance, opportunities, or benefits" [Doc. 4 at ¶33].

Because Plaintiff alleges only conclusory statements and threadbare recitals of the elements her Section 504 and ADA claims without alleging specific facts supporting that she was denied benefits or discriminated against solely because of her disability, her claims should be dismissed. Further, because the bare facts Plaintiff does allege clearly establish that Plaintiff was considered for and granted access to the benefits of the WSD program of education and there is no factual allegations of overt discrimination, Plaintiff further fails to state a claim upon which relief can be granted and Counts I and II should therefore be dismissed with prejudice.

    **B.**    **No Facts Are Alleged That Support Bad Faith Or Gross Misjudgment On The Part of WSD.**

Even if this Court were to find Plaintiff has set forth facts sufficient to allege a denial of benefits or discrimination, in order to state a claim, Plaintiff must still set forth facts sufficient to allege that school officials acted in bad faith or with gross misjudgment. *B.M.*, 732 F.3d at 887-88. "In order to establish bad faith or gross misjudgment, a plaintiff must show that the defendant's conduct 'depart[ed] substantially from 'accepted professional judgment, practice or standards [so] as to demonstrate that the person[s] responsible actually did not base the decision on such a judgment.'" *Id*. at 887, *quoting M.Y. v. Special Sch. Dist. No. 1*, 544 F.3d 885, 890 (8th Cir. 2008). "Congress did not intend to create general tort liability for reasonable decisions made by professionals in the educational context." *M.Y.*, 544 F.3d at 890. As such, Section 504 "do[es] not permit the federal courts to second-guess the educational decisions of school officials." *Estate of Barnwell*, 880 F.3d at 1055. Therefore, "[g]reat deference is given to local school officials educational judgments when evaluating whether there has been bad faith or gross misjudgment." *Schnelting*, 2011 U.S. Dist. LEXIS 136002 at *23 (*citing Doe v. Arlington County*

8

*School Bd.*, 41 F.Supp.2d 599, 609 (E.D. Va. 1999)). "Something more than an incorrect evaluation, or a substantively faulty IEP is required for liability." *Id*. "The defendant's statutory non-compliance must deviate so substantially from accepted professional judgment, practice, or standards as to demonstrate that the defendant acted with wrongful intent." *B.M.*, 732 F.3d at 887. (*citing M.Y.*, 544 F.3d at 889). Where a school district has exercised "professional judgment" in a such a way so as to not depart grossly from accepted standards among education professionals, it does not violate the ADA or Section 504. *Schnelting*, 2011 U.S. Dist. LEXIS 136002 at *23 (*quoting Monahan v. Nebraska*, 687 F.2d 1164, 1171 (8th Cir. 1982)).

In *I.Z.M. v. Rosemount-Apple Valley-Eagan Pub. Sch.*, an IEP was largely, but not perfectly, implemented regarding the provision of braille accessible instructional materials to the plaintiff when said materials were not provided *one-hundred percent* of the time. 863 F.3d 966, 969 (8th Cir., 2017). There, the court found there was significant evidence demonstrating the steps the district took to provide plaintiff with his instructional materials and assistive devices in accessible formats in a timely manner. *Id*. at 973. The court found there was insufficient evidence of bad faith and gross misjudgment because even though "there may have been statutory instances of noncompliance, 'something more' is necessary to state a claim under the ADA or Section 504." *Id*.

Here, even if the Court were to find that a benefit was denied or there was discrimination because of Plaintiff's disability, there are no factual allegations suggesting WSD acted in bad faith or with gross misjudgment. In Count I, Plaintiff alleges in conclusory fashion that she was denied benefits "when WSD failed to provide the adult support and supervision required by her disability." [Doc. 4 at ¶38]. This, Plaintiff claims, was bad faith or gross misjudgment demonstrating wrongful intent, and therefore discrimination. [Doc. 4 at ¶¶39-40]. No facts,

9

though, are alleged to support these conclusions. In fact, Plaintiff fails to even offer when it is she claims she was left without adult support or supervision. One is left to presume that Plaintiff is referring to the isolated incident on the playground where Plaintiff's paraprofessional left her to attend to "something else." [Doc. 4 at ¶21]. However, as was discussed above, Plaintiff's Petition is devoid of facts suggesting Plaintiff was left alone or unsupervised. Further, no facts are alleged as to how long the paraprofessional was allegedly gone, how far away they went, or how close any other aides, paraprofessionals, or supervisors were.

As to Count II, the words "bad faith or with gross misjudgment" do not even appear within this count. [Doc. 4 at ¶¶41-48]. Instead, Plaintiff alleges she "could have participated in school safely if she had been provided one-to-one adult support." [Doc. 4 at ¶45]. This allegation is perplexing, however, because no injury is alleged to have occurred on the playground, which is the only time Plaintiff alleges her paraprofessional "left." While Plaintiff does allege earlier in her Petition that "Miss K" "struck…or contacted L.H. in such a manner as to cause her head to strike a wall" [Doc. 4 at ¶18], in addition to having nothing to do with anything that happened on the playground (the contact or strike is alleged to have occurred inside the school), this allegation is equivocal as the terms "struck *or* contacted" are indefinite and encompass a range of actions varying from deliberate to accidental, or even unknowing. There are no allegations that "Miss K" or any other employee or school official, including any paraprofessional or aide on the playground, knew of the "contact" or alleged injury. Under these facts, it cannot be said there was bad faith or gross misjudgment. The effect, if any, of Plaintiff's paraprofessional's absence on her safety is unclear from Plaintiff's allegations. As the court noted in *I.Z.M.,* an isolated incidence of noncompliance is insufficient to establish bad faith or gross misjudgment. *I.Z.M.*, 863 F.3d at 973. That Plaintiff's paraprofessional was not with her for a brief moment while Plaintiff was on the

10

playground is not enough to state an ADA or Section 504 violation: *something more* is required which has not been alleged in this case. *Id*.

For the forgoing reasons, Counts I and II of Plaintiff's Petition should be dismissed with prejudice because they fail to state a claim in that there are no facts alleged supporting the conclusory contention that WSD acted in bad faith or with gross misjudgment.

**II.     WSD HAS SOVEREIGN IMMUNITY TO THE COMMON LAW TORT CLAIM ALLEGED IN COUNT V TO WHICH NO EXCEPTION APPIES.**

Sovereign immunity is not an affirmative defense but is part of plaintiff's *prima facie* case. Shifflette v. Missouri Dep't of Natural Res., 308 S.W.3d 331, 334 (Mo. App. W.D. 2010).  Section 537.600 must be strictly construed for it is the rule, not the exception.  MSD v. City of Bellefontain Neighbors, 476 S.3d 913, 921-22 (Mo. Banc. 2016); A.F. v. Hazelwood Sch. Dist., 491 S.W.3d 628, 633 (Mo. App. E.D. 2016).  If the claimant can show no waiver, she is barred from suing the sovereign.  State ex rel. Missouri Div. of Family Services v. Moore, 657 S.W.2d 32, 34-55 (Mo. App. 1983).  To state a claim against a public entity sufficient to survive a motion to dismiss, the plaintiff bears the burden of pleading with specificity facts giving rise to an exception to sovereign immunity.  Richardson v. City of St. Louis, 293 S.W.3d 133, 137 (Mo. App. E.D. 2009).  As such, Sovereign immunity is a jurisdictional, threshold matter.  Lors v. Dean, 746 F.3d 857, 861 (8th Cir. 2014).  Because it is a jurisdictional question, it may be raised at any time and is properly addressed under Fed. R. Civ. Pro. 12(b)(1). *Id*.

Public entities, such as the WSD, are entitled to sovereign immunity in Missouri only with the exception of two situations: (1) injuries arising from the negligent operation of a motor vehicle or (2) injuries arising from dangerous conditions of the school district's property. Edwards v. McNeil, 894 S.W.2d 678, 682 (Mo. App. 1995); *see also* RSMo. §537.600.1 (2009).  Otherwise, Missouri law confers upon public entities broad immunity from common law tort claims. MO.

REV. STAT. §537.600.  See <u>Smith v. Curators of the Univ. of Mo.</u>, 2017 U.S. Dist. LEXIS 227260, at *9 (E.D. Mo., Dec. 20, 2017).  Further, "state sovereign immunity applies to intentional torts as well as torts based on alleged negligence." <u>Id</u>.

Here, Plaintiff attempts to allege what appears to be a negligence claim based on WSD's "Failure to Provide Treatment."  Essentially, Plaintiff is alleging a medical malpractice claim against WSD for its failure to provide first aid or emergency treatment to Plaintiff following her collapse on the playground.  Sovereign immunity, though, bars such claims against a public entity as they fail to fall within either of the two narrow exceptions.  See <u>Casey v. Chung</u>, 989 S.W.2d 592, 593 (Mo. App. E.D. 1998).  Because WSD has sovereign immunity from common law tort claims and Count V does not allege facts which fall into one of the two situations in which a school district waives its sovereign immunity, Plaintiff has failed to meet her burden to allege an exception to sovereign immunity.  Accordingly, Count V against WSD fails to state a claim and should be dismissed with prejudice.

**CONCLUSION**

Each of the claims alleged against WSD should be dismissed with prejudice because Plaintiff fails to allege sufficient facts to state a claim.  Counts I and II fail to state a claim under either the ADA or Section 504 of Rehabilitation Act because Plaintiff has not alleged facts sufficient to support a denial of benefits or discrimination solely because of her disability.  By her own pleading, Plaintiff was provided an IEP, a special education classroom, and adult supervision.  Plaintiff's pleading further fails to allege any facts that support overt discrimination.  Plaintiff also fails to allege facts to support that any alleged denial of benefits or discrimination was the result of bad faith or gross misjudgment as isolated incidents of noncompliance with an IEP are insufficient to satisfy such pleading standard.  Finally, Count V should be dismissed because it is

12

a common law tort claim for which the WSD has sovereign immunity to which no exception applies.

WHEREFORE, for the reasons set forth herein, Defendant Wentzville R-IV School District respectfully requests this Court dismiss the claims against it as asserted in Count I, II, V or in the alternative order Plaintiff to make a more definite statement and any such further relief as this Court deems just and proper.

REICHARDT NOCE & YOUNG LLC

By:    */s/ Catherine M. Robertson*
MATTHEW H. NOCE     #57883MO
mhn@reichardtnoce.com
CATHERINE M. ROBERTSON #63200MO
cmr@reichardtnoce.com
12444 Powerscourt Drive
Suite 160
St. Louis, MO  63131
314/789-1199
314/754-9795 – Facsimile

Attorneys for Defendant
Wentzville School District

**CERTIFICATE OF SERVICE**

I hereby certify that on the 28th day of June, 2023, a true and correct copy of the foregoing was filed electronically with the Clerk of Court via the Court's ECF electronic filing system, and served by e-mail to:

Daniel J. Rhoads
The Rhoads Firm, LLC
8123 Delmar Blvd.
Suite 200
St. Louis, Missouri 63130
therhoadsfirmllc@gmail.com
Attorney for Plaintiff

*/s/Catherine M. Robertson*