UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| L.H., a minor, by and through Next Friend, ASHLYN HENRY, )<br>)<br>*Plaintiff*, )<br>)<br>vs. )<br>)<br>WENTZVILLE R-IV SCHOOL DIST., )<br>*et al*., )<br>)<br>*Defendants*. ) | Cause No.   4:23-cv-00808-SRC |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION
TO DEFENDANT MEGAN SUTTON'S MOTION TO DISMISS
OR IN THE ALTERNATIVE MOTION FOR MORE DEFINITE STATEMENT**

COMES NOW Plaintiff, by and through counsel, and in accordance with Local Rule 7-4.01(B), opposes Defendant Megan Sutton's Motion to Dismiss or in the Alternative Motion for More Definite Statement [Doc. 12] ("the Motion") with the argument and authorities set out below.

I. Background

As discussed in an earlier memorandum,[1] this is a case about a young, nonverbal, autistic girl who suffered a head injury while at school despite a requirement that she have a dedicated aide to keep her safe at school. The victim, L.H., is a child with a disability who had an Individualized Education Plan ("IEP") as a public-school student in the Wentzville R-IV School District ("the District"). Defendant Megan Sutton was the Principal of Heritage Primary School ("the School"), where L.H. was placed for the 2021-22 school year. L.H.'s IEP required that she have adult support "anytime that [L.H.] is outside of the special education classroom for support

---

[1] *See* Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss Plaintiff's Complaint [Doc. # 10], pp. 1-2.

Page **1** of **10**

for peer interaction, safety awareness, and modification of curriculum." *See* Petition [Doc. 4], ¶ 16 at p. 3. The adult support required by L.H.'s IEP entailed a one-to-one aide, or paraprofessional. Id. at ¶ 17.

The District has a Policy, number 2730, which is called "Supervision of Students." Policy 2730 states, "It is the responsibility of principals to arrange for adequate supervision." Petition, ¶ 9 at p. 2. Despite that requirement, L.H. was initially injured when a school employee struck L.H. or contacted L.H. in such a manner as to cause her head to strike a wall. Id. at ¶ 18. L.H. was then taken to the playground, where her paraprofessional left her, id., ¶¶ 20-21 at pp. 3-4, at which time L.H. fell to the ground. Id., ¶ 22 at p. 4. When L.H.'s parents arrived, the school employees told them varying stories about how, when, and where she was injured, which contradicted each other. Id. at ¶ 28.

Count III of the Petition, which was removed to this Court, claims negligence on the part of Defendant Sutton. Specifically, "Defendant Sutton breached her duty by failing to arrange for adequate supervision of L.H. at the time and place of L.H.'s injuries at the School." Id., ¶ 51 at p. 7. Sutton has moved to dismiss Count III on the grounds of various immunities that she argues apply in this case. As explained below, none of the immunities applies under the facts as they have been pled in this matter. Accordingly, Sutton's Motion should be denied.

## II. Legal Standard

Defendant is moving for dismissal of the claims against it under Rule 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible if the plaintiff pleads facts "that allow[ ] the court to draw the reasonable inference that the defendant

is liable for the misconduct alleged." Id. (quoted in Ahern Rentals, Inc. v. EquipmentShare.com Inc., 59 F.4th 948, 953 (8th Cir. 2023)).

III.  Argument

Defendant Sutton's Motion argues that three immunities protect her from liability to L.H. She claims official immunity, protection under the public duty doctrine, and statutory relief from the Coverdell Act.  This section explains why none of the immunities claimed by Sutton applies in this case.

**A.    Official immunity does not protect Defendant Sutton because Policy 2730 and L.H.'s IEP together imposed a ministerial duty upon Defendant Sutton.**

Although the Motion is filed under Rule 12(b)(6), official immunity is actually an affirmative defense, to which Defendant has the burden to plead and prove that she is entitled. Nguyen v. Grain Valley R-5 Sch. Dist., 353 S.W.3d 725, 730 (Mo. App. 2011).

Official immunity protects public officials from liability for alleged acts of ordinary negligence committed during the course of their official duties for the performance of discretionary acts.  Woods v. Ware, 471 S.W.3d 385, 391 (Mo. App. W.D. 2015).  It does not provide public employees immunity for torts committed when acting in a ministerial capacity.  Id. at 392.  "The determination of whether an act is discretionary 'is made on a case-by-case basis, considering (1) the nature of the public employee's duties; (2) the extent to which the act involves policymaking or exercise of professional judgment; and (3) the consequences of not applying official immunity.'"  Nguyen, 353 S.W.3d at 274 (quoting Southers v. City of Farmington, 263 S.W.3d 603, 610 (Mo. banc 2008)).  A ministerial duty may be based on a statute or regulation, but it need not be.  In fact, ministerial duties include any "departmentally-mandated duty," which can "arise from sources other than statutes or regulations," such as "departmental rules, the orders of a

Page 3 of 10

superior, or the nature of the position for which the defendant was employed." Nguyen, 353 S.W.3d at 274.

A recent case from the Missouri Court of Appeals illustrates official immunity in the school setting. In *J.M. v. Lee's Summit Sch. Dist.*, 545 S.W.3d 363 (Mo. App. W.D. 2018), a student was injured while playing softball during an after-school program. A school district policy in that case stated, "When protective equipment is provided, all persons are required to use the equipment as directed." *Id.* at 372. Before the students played, a teacher ("Bishop") instructed them that anyone playing catcher was required to wear a face mask. *Id.* at 367. The plaintiff was provided a face mask; but when it did not fit, the teacher's assistant ("DeMarco") allowed the plaintiff "to play catcher without the facemask but stand further back, closer to the fence behind the plate." *Id.* at 368. Inevitably, the student was injured because he was not wearing the face mask.

When the student sued DeMarco, the defendant claimed official immunity. However, the court held that DeMarco had violated a ministerial duty. The court acknowledged, "DeMarco's duty was to conduct and supervise the students playing a game of softball, which required him to exercise some discretion." *Id.* at 372. "However, DeMarco was provided specific direction from Bishop that all players were to wear facemasks and the other protective gear provided by the District when playing the catcher position." *Id.* Thus, "when read together the policies coupled with the direct instruction from Bishop, DeMarco was without discretion regarding the use of the protective mask for any student playing catcher during the game." *Id.* at 372-73. The court concluded, "By not requiring J.M. to wear a facemask, DeMarco failed to perform a required ministerial act." *Id.* at 373.

In this case, the ministerial duty owed by Defendant Sutton arises out of both Policy 2730 and L.H.'s IEP. L.H.'s IEP required that she have adult support "anytime that [L.H.] is outside of

the special education classroom for support for peer interaction, safety awareness, and modification of curriculum," Petition, ¶ 16 at p. 3, in the form of a one-to-one aide, or paraprofessional. Id. at ¶ 17. Policy 2730 places upon the school principal the duty "to arrange for adequate supervision." Petition, ¶ 9 at p. 2. Synthesizing Policy 2730 and L.H.'s IEP, Defendant Sutton owed L.H. a ministerial duty to arrange for the adult support required by the IEP.[2] Sutton's breach of her duty caused L.H. to suffer the head injuries describe in the Petition.

Defendant argues that Policy 2730 invokes a discretionary act of arranging generally for "adequate supervision" in the school building.  Her argument, however, fails to contend with the role that L.H.'s IEP played in defining the type of supervision that would be adequate for L.H. In one sense, L.H.'s paraprofessional was like the face mask in J.M.—a mandatory part of supervision.  As IEP provisions are mandatory, as opposed to optional, Defendant Sutton lacked discretion to deviate from its requirement of a one-to-one aide.  Due to this distinction, L.H.'s case does not involve a general supervisory duty, but presents a circumstance in which the assignment of and arrangement for a paraprofessional for L.H., for "safety awareness" among other reasons, was non-negotiable and thus not discretionary.

In light of the duty at issue in this case, official immunity does not protect Defendant Sutton at the Rule 12(b)(6) stage.

**B.     The public duty doctrine does not immunize Defendant Sutton against Count III because the supervision required by L.H.'s IEP was owed to L.H. individually and not to the public at large.**

Alternatively, Defendant Sutton argues that she is shielded from liability by the public duty doctrine.  Unlike official immunity, the public duty doctrine "is not an affirmative defense," but

---

[2] If an employee other than Sutton was responsible for arranging L.H.'s adult support, Defendants should identify that individual.

Page **5** of **10**

rather "negates the duty element required for a plaintiff to prove negligence." E.M. v. Gateway Region YMCA, 613 S.W.3d 388, 396 (Mo. App. 2020) (citing Southers, 263 S.W.3d at 612).

The public-duty doctrine provides that a public employee is not civilly liable for the breach of a duty she owes to the general public rather than to a particular individual. E.M., 613 S.W.3d at 396 (citing Southers, 263 S.W.3d at 611). "The public-duty doctrine does not insulate a public employee from all liability because the employee could still be found liable for a breach of ministerial duties in which an injured party had a 'special, direct, and distinctive interest.'" E.M., 613 S.W.3d at 396 (citing Southers, 263 S.W.3d at 611-12). "This exception comes into play when injury to a particular, identifiable individual is reasonably foreseeable as a result of the public employee's breach of duty." E.M., 613 S.W.3d at 396 (citing Southers, 263 S.W.3d at 612). "Whether an individual has such a special, direct, and distinctive interest depends on the facts of each case rather than on broad pronouncements about the usual status of relevant functions." Id.

In E.M., a student reported to her school principal that a physical education teacher had shown inappropriate interest in her. The principal never reported the teacher to the Children's Division for suspicion of abuse or neglect, despite being a mandatory reporter by statute. The teacher statutorily raped the student after the school prom. The student sued the principal, claiming that she had a ministerial duty to report the suspected abuse by the teacher.

The teacher argued that she was protected by both official immunity and the public duty doctrine. Notably, the court rejected her claim of official immunity, finding that the statute's reporting requirement created a ministerial duty. E.M., 613 S.W.3d at 400.[3] However, the court granted the principal's motion to dismiss on grounds of the public duty doctrine. It held that Missouri's child abuse statute, which requires reporting by school principals, "creates a duty owed

---

[3] The trial court's determination of a ministerial duty was not addressed by the appellate court because the judgment was affirmed on the basis of the public duty doctrine.

Page **6** of **10**

to the general public, rather than a duty owed to any particular individual." Id. at 397.  The school's regulation, which reinforced the statutory duty to report, was implemented "to protect all children in its schools in a manner similar to the manner in which [the statute] was enacted to protect all children in Missouri" and did "not suggest that any particular student has a special, direct, and distinctive interest." Id. at 399.

As in the context of official immunity, the relevance of L.H.'s IEP distinguishes the analysis in her case from the precedents cited by Defendant.  As the Supreme Court has recognized, "A focus on the particular child is at the core of the IDEA." Endrew F. v. Douglas County Sch. Dist., 137 S. Ct. 988, 999 (2017) (referring to the Individuals with Disabilities in Education Act, 20 U.S.C. §§ 1400 through 1482).  "An IEP is not a form document." Id.  It must be "'*specially* designed' to meet a child's '*unique* needs' through an '*[i]ndividualized* education program.'..." Id. (emphases in Court's opinion) (citing 20 U.S.C. §§ 1401(29), (14)).

Given that L.H.'s IEP required her to have a paraprofessional "anytime that [L.H.] is outside of the special education classroom for support for . . . safety awareness . . .," Plaintiff had a 'special, direct, and distinctive interest' in being so supervised.  Further, injury to L.H., as a particular, identifiable individual, in the absence of the required adult support was reasonably foreseeable in the case of the public employee's breach of duty.  Although Sutton might have enjoyed discretion in deciding what supervision was "adequate" for the student body at large, L.H.'s IEP made it imperative and non-discretionary that L.H. have a one-to-one aide at any time she was outside the special education classroom.  Sutton's breach of that duty foreseeably resulted in injury to L.H.

As the duty that Defendant Sutton owed to L.H. was more specific and individualized than a duty owed to the general public or just the student body at large, the public duty doctrine does not insulate Sutton from liability.

C.   **The Coverdell Act does not immunize Defendant Sutton against Count III because the elements of Coverdell Act immunity are not present.**

Finally, Defendant Sutton claims immunity under the Paul D. Coverdell Teacher Protection Act of 2001, 20 U.S.C. §§ 7941 through 7948 ("the Coverdell Act" or "the Act").  (A school principal is included in the Act's definition of "teacher."  20 U.S.C. § 7943(6)(A).)  In order to benefit from this affirmative defense, a defendant must "establish[] every element of Coverdell immunity." *Lackey v. Iberia R-V Sch. Dist.*, 487 S.W.3d 57, 61 (Mo. App. 2016).  Although school administrators often lob in the Coverdell Act when seeking immunity to liability, its elements are distinct from those of official immunity, and they must be separately pled and proven. Dydell v. Taylor, 332 S.W.3d 848, 855 (Mo. 2011).

The purpose of the Coverdell Act is to give teachers and other school employees "the tools they need to undertake reasonable actions to maintain order, discipline, and an appropriate educational environment." 20 U.S.C. § 7942.  Accordingly, one of the necessary conditions for protection from the Coverdell Act is that "the actions of the teacher were carried out in conformity with Federal, State, and local laws (including rules and regulations) in furtherance of efforts to control, discipline, expel, or suspend a student or maintain order or control in the classroom or school . . .."  Id. at § 7946(a)(2).  As the statutory text suggests, the Act does not apply to all discretionary acts of school officials, but only to those acts that are "in furtherance of efforts to control, discipline, expel, or suspend a student or maintain order or control in the classroom or school." Id.  Thus, unless the pleadings establish that the challenged actions of the defendant were directed to "control, discipline, expel, or suspend a student or maintain order or control in the

Page **8** of **10**

classroom or school," she is not entitled to dismissal under the Act.  See Kemp v. McReynolds, 621 S.W.3d 644, 657 (Mo. App. 2021).

In this case, the Coverdell Act does not apply to immunize Defendant Sutton because her failure to ensure that L.H. was supported by a one-to-one aide at the time she was injured at school was unrelated to any issue of control, discipline, expulsion, suspension, or maintenance of order or control.  Moreover, Sutton has not identified any federal, state, or local law, rule, or regulation in whose safe harbor she was operating at the time of her failure.  Sutton merely states, "the Petition is devoid of facts suggesting Sutton violated any federal, state, local law."  Document # 13, p. 13.  To begin, that statement is inaccurate—as should be clear by this point, Defendant's failure to follow L.H.'s IEP, as required by the IDEA, is part of the gravamen of Count III.  Moreover, Defendant Sutton has the burden to plead and prove the elements of her affirmative defense, including the law whose safe harbor she is claiming.  Kemp, 621 S.W.3d at 657.

Additionally, the Coverdell Act does not apply in cases of "gross negligence; reckless misconduct; or a conscious, flagrant indifference to the rights or safety of the individual harmed."  20 U.S.C. § 7946(a)(4).  The Petition in this case states that Defendants' actions in staffing and supervision "deviated so substantially from accepted professional judgment, practice, or standards as to demonstrate that they acted with wrongful intent."  Petition, ¶ 39 at p. 5.  Therefore, a positive exception to Coverdell Act immunity is pled in the Petition.

Given that Defendant Sutton breached her duties under Policy 2730 and the IDEA and that she has not identified any disciplinary laws to which her conduct conformed, the Coverdell Act does not provide her shelter in this case.

IV.  Conclusion

None of the immunities claimed by Defendant Sutton in the Motion she filed provides her protection in this case.  The Motion should therefore be denied.

          RESPECTFULLY SUBMITTED

*/s/ Daniel J. Rhoads*
Daniel J. Rhoads, 59590
**THE RHOADS FIRM, LLC**
8123 Delmar Blvd., Suite 200
St. Louis, MO 63130
Phone:  (855) 895-0997
Fax:  (314) 754-9103
therhoadsfirmllc@gmail.com

*Attorney for Plaintiff*
*L.H., a minor, by and through*
*Next Friend, Ashlyn Henry*

CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing Memorandum in Opposition was filed via the Court's electronic filing system on August 22, 2023, effecting service to counsel of record:

Matthew H. Noce, mhn@reichardtnoce.com
Catherine M. Robertson, cmr@reichardtnoce.com
Reichardt, Noce & Young, LLC
12444 Powerscourt Drive, Suite 160
St. Louis, MO 63131

*Attorneys for Defendant*
*Wentzville School District*

*/s/ Daniel J. Rhoads*